**Appeal of Gennaro ANGIULO.**

**No. 78–1134.**

United States Court of Appeals,
First Circuit.

Argued May 1, 1978.
Decided June 16, 1978.

Gerald Alch, Boston, Mass., with whom William J. Cintolo, Boston, Mass., was on brief, for appellant.

George F. Kelly, Atty., Dept. of Justice, Washington, D. C., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., and Gerald E. McDowell, Atty., Dept. of Justice, Washington, D. C., were on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

Appellant was adjudged in contempt as a recalcitrant witness for refusing to answer questions propounded to him by a grand jury. This jury was investigating possible perjury, 18 U.S.C. § 1623, committed in connection with a prior grand jury inquiry into gambling, 18 U.S.C. § 1955. The earlier proceeding resulted in indictment of a number of defendants, all of whom pleaded guilty. Appellant was listed as an unindicted co-conspirator in the earlier prosecution on the strength of testimony by a state trooper that appellant was seen at a meeting at a cafe with several defendants. One of the defendants, after pleading guilty and being sentenced, allegedly testified before the grand jury about this meeting and denied that appellant was present. The grand jury, wishing to determine if perjury had been committed before it, subpoenaed appellant, advising him that he was not a target and that the subject of its inquiry was a possible violation of 18 U.S.C. § 1623. The government, meanwhile, considers appellant as a possible defendant in a criminal gambling prosecution which might be brought under 18 U.S.C. § 1955.

Appellant moved to quash the grand jury's subpoena, arguing that he was really a target witness; that the subpoena was a sham, utilized solely to put appellant in a situation where he would have to claim his Fifth Amendment privilege, to his prejudice; and that the manner in which the prosecution and grand jury have dealt with appellant violated the new (December 16, 1977) guidelines given United States Attorneys by the Department of Justice.[1] The district court denied the motion, noting that "in spite of the fact that the circumstances of this case almost certainly require the witness to claim the privilege of the Fifth Amendment . . . an exercise of the

---

1. The relevant part of the guidelines concern the treatment of "targets". A "target" is defined as "a person as to whom the prosecutor or the grand jury has substantial evidence linking him to the commission of a crime and who, in the judgment of the prosecutor, is a putative defendant." A "subject" is "a person whose conduct is within the scope of the grand jury's investigation."

Insofar as the guidelines deal with "targets", they recognize that the Court in *United States v. Washington*, 431 U.S. 181, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977) required no special warnings that individuals were "in danger of indictment" but stated that "we will continue the long-standing internal practice of the Department to advise . . . 'targets' . . . that their conduct is being investigated for possible violation of federal criminal law." More specifically, while the guidelines allow a target to be subpoenaed and questioned about his involvement in the crime under investigation, they strive to avoid unfairness and misunderstanding by (A) urging an effort to secure a voluntary appearance and (B) urging that before a subpoena is approved, "careful attention" be paid to (1) the importance of the testimony sought, (2) "whether the substance . . . could be provided by other witnesses", and (3) "whether the questions . . . would be protected by a valid claim of privilege."

The instructions reject a rule which would excuse a witness who asserts that he will claim his Fifth Amendment privilege unless the prosecutor is prepared to seek an order granting immunity under 18 U.S.C. § 6003. "[S]uch a broad rule", it observes, "would be improper and too convenient for witnesses to avoid testifying truthfully to their knowledge of relevant facts. Moreover, once compelled to appear, the witness may be willing and able to answer some or all of the grand jury's questions without incriminating himself." But the guidelines do suggest that "ordinarily" the witness should be excused if both he and his attorney "state in a writing signed by both that the 'target' will refuse to testify on Fifth Amendment grounds."

privilege is a prerequisite to a request for immunity under 18 U.S.C. § 6003." It framed a protective order, requiring the prosecutor to

"(1) Advise the witness fully of his rights;

(2) To discontinue the interrogation after the witness' intention to claim the privilege becomes apparent; and

(3) To advise the grand jury, in the event that the witness claims the privilege, that no adverse inference is to be drawn against him on that account."

Appellant thereafter appeared before the grand jury on March 7 and 9, 1978. He answered some questions and, according to the district court, "made speeches in response to some . . . which contained answers somewhere in the middle of them." He refused to answer eleven questions on the ground they exceeded the scope of the subpoena. After a hearing on the government's motion to compel answer, on April 4, 1978, appellant was ordered to reappear before the grand jury and to refrain from refusing to answer on the ground the questions exceeded the scope of the subpoena. He appeared, and refused to answer six of the eleven questions—one on the ground of scope and five on a supposed Fourteenth Amendment ground of abuse of the grand jury process.[2] Both appellant and the government treat the issue as whether the circumstances surrounding the issuance of a subpoena to appellant constitute a denial of due process and/or an abuse of the grand jury process.

■ Appellant's first argument is that he was placed in a Catch 22. If, in being asked about the cafe rendezvous, he were to deny that he was in attendance, he knew that the state trooper had testified to the contrary and, so the argument is made, would face a high probability of a perjury prosecution. If, on the other hand, he were to admit his presence, he would face the possibility of being indicted for gambling. This dilemma would give us concern if a grand jury witness were not, at the same time, warned that he could remain silent. *Cf. United States v. Chevoor,* 526 F.2d 178 (1st Cir. 1975). But here the court's protective order required that appellant be advised fully of his rights. He knew, therefore, that he could claim his Fifth Amendment privilege.

Appellant nevertheless seeks to construct an amorphous abuse of process claim that refusal to answer a grand jury is justified where the subpoenaing of the witness is "solely for the purpose of compelling him to invoke a Fifth Amendment privilege." The factual predicate is by no means established. In appellant's appearances on three occasions before the grand jury, he has answered some questions, apparently at some length; others he has refused to answer as being beyond the proper scope of his subpoena; he has not yet claimed his Fifth Amendment privilege. Even if appellant had orally asserted that he would claim his Fifth Amendment privilege, the prosecutor would not, under the current guidelines, *see* note 1, be advised to seek an order granting immunity, such an action being deemed precipitous, "too convenient" for witnesses, and perhaps unnecessary.

Apart from the lack of factual basis for appellant's claim, we find it difficult to see its constitutional basis. In *United States v. Washington,* 431 U.S. 181, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977), a potential defendant whose indictment was considered likely by the prosecution was summoned before the grand jury. To the argument that warning defendant of his rights "in the presence of the grand jury undermines assertion of the Fifth Amendment privilege by placing the witness in fear that the grand jury will infer guilt from the invocation of the privilege", the Court replied:

" . . . This argument entirely overlooks that the grand jury's historic role is

2. Such a claim is not easily found in a federal prosecution. In any event, apparently to avoid a new motion to compel, appellant stipulated that this formulation raised no different objection than that covered by his earlier claims that the questions exceeded the scope of the subpoena.

as an investigative body; it is not the final arbiter of guilt or innocence. Moreover, it is well settled that invocation of the Fifth Amendment privilege in a grand jury proceeding is not admissible in a criminal trial, where guilt or innocence is actually at stake." *Id.* at 191, 97 S.Ct. at 1821.

Appellant goes so far as to argue that merely being brought before the grand jury—exposing his "manner and views"—may arouse suspicion, that mere interrogation may harm him even if he denies participation in acts about which he is questioned. The argument that appellant should be spared grand jury appearance and interrogation is apparently based on the fact of his still being considered as a possible defendant under § 1955. It does seem likely that answers to the questions addressed to appellant would be useful to both a perjury and a gambling prosecution. But we know of no authority to bar the grand jury from trying to identify perjury committed before it, simply because its witness may be a suspect in another proceeding.[3] If appellant were the only living being who could shed light on the truth or falsity of what the grand jury had been told, we doubt not that it could proceed. If the witness feels threatened, he may always claim his privilege. Under the court's protective order, interrogation must cease when intention to claim the privilege is made manifest; and, if the privilege is claimed, the jury is instructed to draw no adverse inference.

Appellant finally cites *United States v. Jacobs*, 531 F.2d 87, *vacated*, 429 U.S. 909, 97 S.Ct. 299, 50 L.Ed.2d 277 *on remand*, 547 F.2d 772 (2d Cir. 1976), in which the Second Circuit, in the exercise of its supervisory power, held that where the uniform practice of U.S. Attorneys within the circuit had been to advise a potential defendant that he was a target, failure to so advise a potential defendant would be cause for suppression of any testimony from such defendant. Appellant urges us similarly to exercise our supervisory power to force the prosecution to live up to its guidelines. Once again the predicate is missing—a finding or overwhelming indication that appellant is a "target" as opposed to a "subject". The only record support pointed to by appellant is the fact that appellant is still being "considered" as a possible defendant. Moreover, there is nothing to indicate disobedience of the guidelines, which are general in nature in that they require that "careful attention" be paid to such factors as whether other witnesses can give the information and whether there would be a valid claim of privilege. Lacking a factual basis for doing so, we need not resolve the legal question whether the prosecution's failure to adhere to the guidelines would provide grounds for a refusal to respond to questions before a grand jury.

Appellant has received meticulous attention to his just concerns. The order of commitment is

*Affirmed.*

---

**3.** *United States v. Doss*, 563 F.2d 265 (6th Cir. 1977), is too remote in its facts to help appellant here. In *Doss* a defendant had been indicted; he had not been informed of the indict-

ments against him; he had been called by the grand jury to be questioned secretly about the subject matter of the indictments and without counsel present.