UNITED STATES of America, Appellee,

v.

Curtis BABB, Defendant, Appellant.

No. 86–1081.

United States Court of Appeals,
First Circuit.

Argued Sept. 4, 1986.
Decided Dec. 17, 1986.

Patricia Elliot, Cambridge, Mass. by Appointment of the Court, with whom Owens and Associates, Henry F. Owens, III and Ellen K. Wade, Boston, Mass., were on brief, for defendant, appellant.

Jonathan Chiel, Asst. U.S. Atty., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before BOWNES and TORRUELLA, Circuit Judges, and CARTER,* District Judge.

GENE CARTER, District Judge.

Once again we are faced with an appeal in which a convicted defendant-appellant seeks to overturn his conviction by alleging prosecutorial misconduct. In this case, defendant-appellant Curtis Babb claims that his conviction for committing perjury before a United States grand jury is fundamentally unfair because the prosecutor falsely assured him, immediately before his grand jury testimony and in the presence of the grand jury, that he was neither a subject nor a target of the grand jury's inquiry. Alternatively, Babb urges us to exercise our supervisory powers to suppress his testimony because the prosecutor disregarded Department of Justice guidelines regarding subject and target warnings. We affirm the conviction.

## I.

The case arises from an investigation by a United States grand jury, sitting in Boston, Massachusetts, of a massive heroin and cocaine distribution organization, known as the Capsule Boys for its practice of encapsulating the drugs it distributed. The record before us reveals that the grand jury had questioned a large number of witnesses, beginning at least as early as March 21, 1984 and extending to at least July 25, 1984. The record also shows that the same Assistant United States Attorney, Oliver C. Mitchell (the prosecutor), had conducted the questioning throughout the investigation. Babb was among the last witnesses questioned in this group, having been called on July 25, 1984.

The record before us also indicates that it was the prosecutor who first had mentioned Babb's name in the course of the grand jury proceedings, during the questioning of Jackson Blandley in Mr. Blandley's third appearance before the grand jury. The prosecutor specifically had asked, "And Curtis Babb, sir, do you know him?" Testimony of Jackson Blandley, April 25, 1984, at 13. Subsequent witnesses either had named Babb spontaneously[1] or had responded to the prosecutor's direct questions about Babb.[2] In addition, the testimony of Charles Irby on July 13, 1984 had directly implicated Babb in the organization and supervision of the Capsule Boys. Irby, who had been given an opportunity to recant his prior grand jury testimony, had begun his recantation by describing Babb as the person who had recruited him to sell drugs in Boston. Moreover, throughout his testimony, Irby had mentioned Babb as a central figure in the organization and supervision of drug sales in Boston. Testimony of Charles Irby, July 13, 1984, *passim*.

When called to testify before the grand jury on July 25, 1984, Babb was incarcerat-

---

* Of the District of Maine, sitting by designation.

1. Testimony of Sharon Berry, June 22, 1984, at 12–13 (naming Babb as one of the people Michael DuBose introduced to her as a friend who sold cocaine or heroin in capsules); Testimony of Barbara Berry, June 29, 1984, at 15 (identifying Babb as a visitor at Jackson Blandley's rented room); Testimony of Michael DuBose, July 6, 1984, at 13 (naming Babb as his associate in the sale of drugs); Testimony of Pamela DuBose, July 13, 1984, at 12 (mentioning Babb as an acquaintance of her brother, Michael DuBose).

2. Testimony of Gwendolyn Berry, June 22, 1984, at 54 ("Do you know Curtis Babb?"); Testimony of Doreen Lee, July 6, 1984, at 17 ("And do you know a person named Curtis Babb?"); Testimony of May Jo Smith, July 6, 1984, at 17 ("Do you know a person named Curtis Babb?"); Testimony of Brenda Thomas Austin, July 25, 1984, at 22 ("Do you know Curtis Babb?").

ed. He appeared without the assistance of counsel. After having been given the usual oath, Babb was advised of his fifth amendment rights.[3] In addition, the prosecutor informed him that, "at this stage of the Grand Jury investigation you are neither a target nor a subject of the investigation." Testimony of Curtis Babb, July 25, 1984, at 4. The prosecutor then informed Babb of the subject matter of the investigation but did not inform him that his name had come up frequently in the questioning of other witnesses. The record reveals that Babb was a reticent witness, answering most questions with a terse "No, sir" or "Yes, sir." *Id., passim.* Nevertheless, Babb's answers were sharply at variance with the testimony of prior witnesses; his short answers were a categorical denial of both his involvement with the Capsule Boys and his relationships with numerous other witnesses. Once Babb had so testified, the prosecutor warned him about the possibility of a perjury indictment and asked him if he wished to change his testimony. Babb, however, continued to testify in the same manner.

On August 12, 1985, Babb was indicted both for knowingly making false material declarations before a United States grand jury in violation of 18 U.S.C. § 1623(a) and for conspiracy to possess with intent to distribute and conspiracy to distribute heroin and cocaine in violation of 21 U.S.C. § 846. Prior to trial, Babb moved both to suppress his grand jury testimony and to dismiss the perjury indictment alleging that the misrepresentations regarding his status before the grand jury were a violation of his fifth amendment rights. The trial court denied both motions and also refused Babb's request for an evidentiary hearing. Following a jury-waived trial at which the government did not use his grand jury testimony, Babb was found guilty of the conspiracy charge. Babb then entered a conditional plea of guilty to the perjury charge, reserving his motion to suppress for this appeal, which he timely filed.

## II.

Babb admits that he committed perjury before the United States grand jury.

---

**3.** The full text of the pertinent part of the grand jury transcript reads as follows:

Q. Now, Mr. Babb, I have to explain certain rights to you, rights which you have under the Constitution to [sic] the United States. You have a right to remain silent and to refuse to answer any question which might tend to incriminate you. Do you understand that, sir?
A. Yes, sir.
Q. You have a right, sir, also to consult with a lawyer before testifying before the Grand Jury and if you cannot afford a lawyer, a lawyer can be appointed for you. Do you understand that?
A. Yes, sir.
Q. And Mr. Babb, do you understand that if you say anything before the Grand Jury, anything you say can be used in a court of law to prosecute you? Do you understand that?
A. Yes, sir.
Q. Mr. Babb, I should inform you that at this stage of the Grand Jury investigation you are neither a target nor a subject of the investigation. Do you understand that, sir?
A. Yes, sir.
Q. And do you understand what I mean when I say you are not a target and you are not a subject?
A. Yes, sir.

Q. Do you understand that, you're comfortable with those terms?
A. Yes, sir.
Q. And Mr. Babb, let me tell you briefly what the Grand Jury's investigation is about. The Grand Jury is looking into the activities of a group of men and some women who were collectively knows as the Capsule Boys and their distribution of heroin and cocaine principally in the Roxbury and Dorchester sections in Boston in 1981, 1982 and part of 1983. The Grand Jury is also investigating the activities of certain individuals located in New York City and Bridgeport, Connecticut and Greenville, South Carolina and their relationship to the Capsule Boys organization. Do you understand what I have just said to you?
A. Yes, sir.
Q. The Grand Jury is focusing also, sir, on possible violations of Title 21 of the United States Code, Section 846 which makes it unlawful to conspire to commit an offense against the United States. Do you understand that, sir?
A. Yes.
Q. Yes?
A. Yes, sir, I do.
Testimony of Curtis Babb, July 25, 1984, at 3–5.

Nevertheless, he seeks to excuse this perjury by pointing out that the prosecutor affirmatively misrepresented to him that he was neither a target nor a subject [4] of the grand jury investigation. We turn first to Babb's argument that the prosecutor's misrepresentations regarding his status were a violation of his fifth amendment rights.

### A. Self-Incrimination

Babb argues that the prosecutor's misrepresentations taint any supposed waiver by him of his fifth amendment privilege against self-incrimination because, under the circumstances, his waiver cannot be found to be knowing and intelligent.[5] Babb's self-incrimination claim must fail, however, because at no time did Babb incriminate himself.

4. Babb argues that at the time of his testimony he was a subject or a target of the grand jury investigation. Under the relevant Department of Justice guidelines, a "target" is defined as "a person as to whom the prosecutor or the grand jury has substantial evidence linking him to the commission of a crime and who, in the judgment of the prosecutor, is a putative defendant." A "subject" is "a person whose conduct is within the scope of the grand jury's investigation." It is clear from the record that Babb was at least a subject. The government, however, apparently concedes that Babb was a target. Brief for Appellee at 17 n. 3. Usually, a determination of target status requires an evidentiary hearing. See United States v. Winter, 663 F.2d 1120, 1151 (1st Cir.1981). Nevertheless, because a finding that Babb was a target of the grand jury's inquiry in no way changes our reasoning, we proceed in accordance with the government's concession.

5. Babb alleges, but does not seriously pursue this allegation, that he had attempted to claim his fifth amendment privilege against self-incrimination at the beginning of his appearance before the grand jury. The transcript of the pertinent exchange reads as follows:

Q. Now, Mr. Babb, having in mind all of the rights I detailed to you, do you wish to testify before the Grand Jury?
A. No, sir.
Q. And can you explain to the Grand Jury the basis for your refusal to testify to the Grand Jury?
A. One thing, I am not sure what's going on. I don't have no knowledge of what's happening and I don't want to get involved in nothing.
Q. And so you're telling the Grand Jury that the only reason you don't want to testify is

Witnesses appearing before the grand jury enjoy the protection of the fifth amendment privilege against self-incrimination. *Counselman v. Hitchcock,* 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 110 (1892). The privilege extends to all questions that require self-incriminating answers, but the privilege must be claimed if the witness seeks to show that he was compelled within the meaning of the fifth amendment. *United States v. Mandujano,* 425 U.S. 564, 574, 96 S.Ct. 1768, 1775, 48 L.Ed.2d 212 (1976) (*citing United States v. Monia,* 317 U.S. 424, 427, 63 S.Ct. 409, 410, 87 L.Ed. 376 (1943)). Nevertheless, the failure of the witness to understand the privilege against self-incrimination will not require the subsequent suppression of the wit-

you have no knowledge regarding the activities of the Capsule Boys, is that right?
A. Yes, sir.
Q. And you're telling the Grand Jury that you don't want to testify also because you don't want to get involved, is that right?
A. Yes, sir.
Q. And those are the only reasons you don't want to testify before the Grand Jury, is that correct?
A. Yeah, I don't want to get involved with nothing.
Q. And you say you don't know anything about the activities of the Capsule Boys?
A. No, sir.

Testimony of Curtis Babb, July 25, 1984, at 5–6.

If the fifth amendment privilege before a grand jury were as broad as the privilege that attaches to custodial interrogation, Babb's allegation would indeed heighten our inquiry. Unlike a person subject to custodial interrogation, however, a witness before a grand jury cannot refuse to answer all questions. Instead, the witness must assert the privilege as to those questions that require a self-incriminating answer; once the privilege is asserted, however, the grand jury may pursue other lines of inquiry. *United States v. Mandujano,* 425 U.S. 564, 572–75, 580–81, 96 S.Ct. 1768, 1778, 48 L.Ed.2d 212 (1976). In Babb's case, the prosecutor sought a clarification of Babb's initial refusal to give any testimony. Although the prosecutor's inquiry did not include a reminder that Babb could refuse to testify if the testimony would incriminate him, there is no requirement that this warning, once initially given, must be repeated. We note that the prosecutor did later repeat the warning, Testimony of Curtis Babb, July 25, 1984, at 26–27, and that Babb also spontaneously mentioned his right "to remain silent." *Id.* at 11.

ness's concededly false statements. *United States v. Wong,* 431 U.S. 174, 177–79, 97 S.Ct. 1823, 1825–26, 52 L.Ed.2d 231 (1977). There is also no requirement that the witness be warned regarding the consequences of committing perjury before the grand jury. *Mandujano,* 425 U.S. at 581–82, 96 S.Ct. at 1778–79. Nor can a witness, at his trial for the substantive offense investigated by the grand jury, have his testimony suppressed because he was not warned that he was a target or potential defendant. *United States v. Washington,* 431 U.S. 181, 189, 97 S.Ct. 1814, 1819, 52 L.Ed.2d 238 (1977).

As Babb correctly points out, however, these cases do not address the distinct question of whether misleading warnings should lead to a different result. Babb, however, ignores the scope of the privilege against self-incrimination. Babb asserts that he had relied on the prosecutor's misrepresentations and that, consequently, he had incriminated himself before the grand jury. This assertion, however, is not supported by the record. Instead, it is clear from the record that Babb did not incriminate himself—rather, he committed perjury, a separate crime which has never been held to be the substantive equivalent of self-incrimination.

■ "The privilege against self-incrimination bars compelled testimony as to past crimes; it does not shelter new perjury." *United States v. Chevoor,* 526 F.2d 178, 181 (1st Cir.1975), *cert. denied,* 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976); *see also id.* n. 7 (*citing* supporting case law). " 'Our legal system provides methods for challenging the Government's right to ask questions—lying is not one of them.' " *Wong,* 431 U.S. at 180, 97 S.Ct. at 1826 (*quoting Bryson v. United States,* 396 U.S. 64, 72, 90 S.Ct. 355, 360, 24 L.Ed.2d 264 (1969) (footnote omitted)). The seriousness of the crime of perjury and the appropriateness of sanctions for its commission are well-established:

> In this constitutional process of securing a witness' testimony, perjury simply has no place whatever. Perjured testimony is an obvious and flagrant affront to the basic concepts of judicial proceedings. Effective restraints against this type of egregious offense are therefore imperative. The power of subpoena, broad as it is, and the power of contempt for refusing to answer, drastic as that is—and even the solemnity of the oath—cannot insure truthful answers. Hence, Congress has made the giving of false answers a criminal act punishable by severe penalties; in no other way can criminal conduct be flushed into the open where the law can deal with it.
>
> Similarly, our cases have consistently—indeed without exception—allowed sanctions for false statements or perjury; they have done so even in instances where the perjurer complained that the Government exceeded its constitutional powers in making the inquiry.

*Mandujano,* 425 U.S. at 576–77, 96 S.Ct. at 1776 (footnote and citations omitted). Although Babb committed the crime of perjury by testifying before the grand jury, the commission of perjury does not fall within the protection afforded compelled self-incriminating statements. Consequently, we find Babb's argument that the prosecutor's misrepresentations tainted his waiver of his fifth amendment privilege to be unpersuasive.

### B. *Fundamental Fairness*

■ Turning now to Babb's claim that the misrepresentations undermined the fundamental fairness of the proceedings against him, we note that perjured testimony before a grand jury will be suppressed because of prosecutorial misconduct only if the misconduct undermines the validity of the grand jury process itself. *United States v. Doss,* 545 F.2d 548, 552 (6th Cir. 1976) (perjury indictment of a defendant, called to testify before grand jury regarding the crime for which he was indicted, "quashed because the proceeding itself is void"); *Brown v. United States,* 245 F.2d 549, 555 (8th Cir.1957) (perjury conviction reversed where testimony of the witness could not support any possible action of the

grand jury within its competency and thus prosecutor's sole purpose in calling the witness was to lay the foundation for the perjury indictment). *See also United States v. Doe* (Ellsberg), 455 F.2d 1270, 1273 (1st Cir.1972) (noting that the grand jury should not be used to prepare a pending indictment for trial).

Target and subject warnings, however, do not affect the validity of the grand jury process. Indeed, they "add nothing of value to protection of Fifth Amendment rights." *Washington*, 431 U.S. at 189, 97 S.Ct. at 1819. Our task is not to evaluate the specific warnings given; it is to determine "whether, considering the totality of the circumstances, the free will of the witness was overborne." *Id.* at 188, 97 S.Ct. at 1819. In making this determination, we first consider the analysis offered by the Third Circuit in a case remarkably similar to the present case.

In *United States v. Crocker*, 568 F.2d 1049 (3d Cir.1977), the Third Circuit considered whether affirmative misrepresentations by a prosecutor regarding a grand jury witness's target status would require the suppression of the witness's false testimony before the grand jury. The misrepresentations were made when the witness's attorney expressly inquired of the prosecutor whether his client was a target of the grand jury investigation. The prosecutor advised the attorney that the witness was not a target. When the witness subsequently testified before the grand jury, the prosecutor warned him regarding his fifth amendment rights, his oath, and the consequences of perjury. Although the Third Circuit characterized the prosecutorial misrepresentations as "quite troublesome," *id.* at 1055, the court found that due process did not entail an "obligation to do anything more than inform the witness of the dangers of testifying falsely by administering an oath." *Id.* Because the witness had knowledge of the subject of the grand jury's inquiry, the court refused to find that the misrepresentations were a due process violation. *Id.* at 1056.

This court has also had the opportunity to consider whether prosecutorial misrepresentations regarding a grand jury witness's target status require the suppression of that witness's self-incriminating testimony. In *United States v. Winter*, 663 F.2d 1120 (1st Cir.1981), *cert. denied*, 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 479 (1983), the witness-defendant sought to suppress incriminating statements made before the grand jury. Although these statements were not used in the government's case-in-chief against him, the witness alleged that they were obtained because he waived his privilege in reliance on the misrepresentations and that they were used to refresh other witnesses' memories and thus consequently led to his indictment. *Id.* at 1150–52.

In *Winter*, we approached the witness's due process claim by evaluating the totality of the circumstances to determine whether the misrepresentations had actually misled the witness. *Id.* at 1151. We noted that the warnings that were given more than fulfilled the constitutional requirements. In addition, we found that the witness could not "possibly have been misled into waiving his rights" since the prosecutor had warned him that his name had been mentioned by other witnesses. *Id.* at 1152. Finding no relationship between the misconduct and the harm of which the witness complained, we concluded that his due process claim was "tenuous indeed." *Id.*

Turning now to the present case, we find that the reasoning of *Winter* and *Crocker* is dispositive. We note first that Babb received all the warnings required by the Constitution. In addition, Babb was informed of the subject matter of the grand jury's inquiry. As both *Winter* and *Crocker* hold, once the prosecutor has fulfilled any constitutional requirements and if the witness is apprised of the subject of the inquiry, additional warnings, even if inaccurate, are irrelevant.

Finally, we disagree with Babb's assertion that the record supports an inference that Babb's reliance on the misrepresentations make any subsequent proceedings

against him fundamentally unfair. Even if we assume, for purposes of Babb's contentions, that the prosecutor purposely attempted to mislead Babb, the obvious reason for such misrepresentations would have been to induce Babb to waive his fifth amendment privilege and to give helpful testimony to the grand jury. As we discussed above, Babb was not misled in this manner. In fact, it defies logic to argue that assurances that might have lulled a witness into giving incriminating statements had the effect of inducing the witness to commit perjury. Consequently, we find that Babb has failed to establish the necessary nexus between the alleged misconduct and his subsequent perjurious testimony in order to support a claim of fundamental unfairness. *See United States v. McNeill,* 728 F.2d 5, 11 (1st Cir.1984).

### III.

Finally, Babb urges us to reach the issue that we did not reach in *In re Angiulo,* 579 F.2d 104 (1st Cir.1978): whether we should adopt the reasoning of *United States v. Jacobs,* 531 F.2d 87, *vacated,* 429 U.S. 909, 97 S.Ct. 299, 50 L.Ed.2d 277 *on remand,* 547 F.2d 772 (2d Cir.1976), and, in the exercise of our supervisory powers, suppress any testimony of a grand jury witness whom the prosecutor fails to warn is a target in accordance with Department of Justice guidelines. Leaving aside the lack of a factual finding that Babb was indeed a target, *see supra* note 4, we first note that we consider quite seriously the suggestion of prosecutorial misconduct. *See United States v. Bourque,* 541 F.2d 290, 293 (1st Cir.1976).

Our review of the record reveals that the prosecutor failed to give target or subject warnings to any witness called before the grand jury in this investigation. Other than the statements at issue in this appeal, there is only one additional mention of target and subject status—the prosecutor informed one other witness that she was not a target or a subject. *See* Testimony of Brenda Thomas Austin, July 25, 1984, at 6. During the course of this same testimony, however, this same prosecutor also stated: "Mrs. Austin, the Grand Jury has reason to believe that you had some association with the Capsule Boys group." *Id.* at 26. In light of this record, we find the government's characterization of the prosecutor's statements as a good faith error, Brief for Appellee at 17 n. 3, to be totally unpersuasive. Moreover, as we mentioned at argument, we are particularly displeased that this prosecutor did not appear before us to argue the case. In sum, we find the prosecutor's behavior to be more than "quite troublesome;" we find it to be unprofessional and worthy of severe condemnation.

Nevertheless, as we noted in *United States v. Lieberman,* 608 F.2d 889 (1st Cir.1979), *cert. denied,* 444 U.S. 1019, 100 S.Ct. 673, 62 L.Ed.2d 649 (1980), "[o]ur supervisory powers are to be used sparingly. We would be reluctant to exercise them to overturn a conviction that was not the *product* of manifestly improper conduct by federal officials." *Id.* at 899 (*citing Lopez v. United States,* 373 U.S. 427, 440, 83 S.Ct. 1381, 1388, 10 L.Ed.2d 462 (1963)) (emphasis added). *See also United States v. Hasting,* 461 U.S. 499, 506, 103 S.Ct. 1974, 1979, 76 L.Ed.2d 96 (1983) (supervisory powers should not be used if the error alleged is harmless). Because we find that Babb's perjury and his subsequent conviction for that crime were not a "product" of the prosecutorial misconduct, this is not a proper case in which to exercise our supervisory powers.[6] We therefore refuse to suppress Babb's testimony on this ground.

---

**6.** We cannot overly stress this distinction between the prosecutor's misrepresentations and Babb's perjury. To be convicted for perjury, Babb's false statements must have been both knowingly made and material. 18 U.S.C. § 1623(a). Even if the prosecutor had knowingly made false statements to Babb, in this context these misrepresentations would not have been material. If his misrepresentations had been material, then Babb's conviction would have been a product of the prosecutor's improper conduct, and we would have been willing to exercise our supervisory powers.

We have considered Babb's other arguments and find them without merit. The conviction for perjury is

*Affirmed.*