**UNITED STATES of America, Plaintiff,**

**v.**

**Lorenzo MUÑOZ–FRANCO, Francisco Sanchez–Aran, Ariel Gutierrez–Rodriguez, Wilfredo Umpierre–Hernandez, Enrique Gutierrez–Rodriguez, Rafael Dominguez–Wolff, Defendants.**

**Criminal No. 95–0386CCC.**

United States District Court,
D. Puerto Rico.

April 28, 1998.

Guillermo Gil, U.S. Attorney, Edna C. Rosario, Assistant U.S. Attorney, U.S. Attorney's Office of Dist. of Puerto Rico, Civil Div., Jorge E. Vega–pacheco, U.S. Attorney's Office Dist. of Puerto Rico, Criminal Div., Hato Rey, PR, for U.S.

Jorge L. Arroyo–Alejandro, San Juan, PR, Andres Guillemard–Noble, Nachman, Guillemard, Rebollo, Santurce, PR, Harry Anduze–Montano, San Juan, PR, for Lorenzo Munoz–Franco.

Maria H. Sandoval, Santurce, PR, Michael S. Pasano, Zuckerman Spaeder Taylor & Evans, Miami, FL, Joseph J. Rucci, Rucci, Burnham, Carta and Edelberg, LLP, Darien, CT, for Ariel Gutierrez–Rodriguez.

Francisco M. Dolz–Sanchez, San Juan, PR, for Wilfredo Umpierre–Hernandez.

Ramon Garcia–Garcia, Santurce, PR. for Rafael Dominguez–Wolff.

## ORDER

CEREZO, Chief Judge.

Defendants Ariel and Enrique Gutiérrez have filed a Motion for Limited Disclosure of Grand Jury Transcripts supported by memorandum of law (**docket entry 254**). They request that in order "[t]o guarantee that government/prosecutors not misinform, mislead, or misinstruct the grand jury herein, in light of [*U.S. v.*] *Winstar* [*Corp.*, 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996)], ... the Court must either disclose the grand jury transcripts directly to defendants or, at the very least, examine the transcripts in camera to determine just what facts and instructions the grand jury utilized to indict defendants." Docket entry 254, at p. 3, ¶ 7. Referring to the limited disclosure requested, movants state at page 5, ¶ 12, that they "seek only discrete portions of the legal instructions and argument thereon by the prosecutors concerning the fundamental nature of the bank fraud charges."

The following two paragraphs of defendants' motion define the basis of the request:

5. The Government has been well aware for years that the financial losses incurred at Caguas resulted directly from application of the Financial Institution Reform, Recovery and Enforcement Act ("FIRREA"). FIRREA eliminated *inter alia,* special accounting treatment for financial institutions' prior acquisitions of failing thrifts and otherwise changed the rules relating to how thrifts classified assets. FIRREA substantially impacted on Caguas' accounting of and handling of its assets and particularly its loan portfolio, and drastically limited what Caguas could do to cure its problems.

6. In *U.S. v. Winstar Corporation, et. al.,* 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964, the United States Supreme Court held that the United States breached contracts with financial institutions when it enacted FIRREA. We submit that *Winstar* redefines what grand juries and petit juries must be told in failed thrift cases, including bank fraud prosecutions.

Docket entry 254, at pp. 2–3, ¶¶ 5–6.

*Winstar* involved the fallout from the crisis involving the savings and loan industry in the late 1970s and early 1980s. The Government induced healthy thrifts to merge with ailing ones by agreeing to provide favorable regulatory treatment, which would allow the healthy thrifts to count towards their capitalization requirements certain "supervisory goodwill" generated by the mergers. *Winstar,* 518 U.S. at 847–51, 116 S.Ct. at 2442–43. This scheme, however, was ultimately unsuccessful in resolving the thrift industry crisis. As a result, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), which required that all thrift institutions no longer use "supervisory goodwill" to meet their capitalization requirements. This immediately caused several thrifts to fall out of compliance with capitalization requirements, thereby making them subject to seizure by thrift regulators. *Id.* at 855–58, 116 S.Ct. at 2446. The thrifts flied suit claiming breach of contract. A plurality of the Court held that when Congress and the newly created Office of Thrift Supervision altered the regulatory capital requirements for institutions so that superviso-

ry goodwill would no longer be recognized for that purpose, the institutions damaged by that change in treatment were entitled to damages, because the United States, with the passage of FIRREA, had breached its contracts to allow purchased savings and loans to count regulatory goodwill as an asset.

The United States filed on April 6, 1998 (**docket entry 319**) a sealed ex-parte motion submitting a statement under penalty of perjury of the certified Court Reporter who was present at the grand jury session at which the third superseding indictment was issued. The Court Reporter states that he placed the electronic recording device in pause during the reading of the legal instructions since he was under the belief that he did not have to record that part of the session because the instructions were being read from a binder. He states that this occurred during the presentation made by A.U.S.A. Maria Dominguez before the grand jury on the session held on February 25, 1998. Another session was held on March 6, 1998 where he did record legal instructions given by A.U.S.A. Edna Rosario on the forfeiture count. The Court Reporter refers to five written instructions which were shown to him by A.U.S.A. Dominguez as the ones that were read by her, a matter which he asserts was verified with the audio cassette tapes of both grand jury sessions. The instructions submitted by the government are of the type given to jurors during trials and covered general conspiracy (18 U.S.C. § 371), bank fraud (18 U.S.C. § 1344), misapplication of funds by bank employees (18 U.S.C. § 657), false entry in bank records (18 U.S.C. § 1006) and aiding and abetting (18 U.S.C. § 2).

The Court does not order the transcript based on the audio tapes since it would not serve any useful purpose. The bottom line is that legal instructions based on *Winstar* were not provided to the grand jury, nor was there a need to. We have found no authority that requires a prosecutor to anticipate defense theories and to explain them before the grand jury. Instructions are sufficient if the prosecutor reads the statutory language defining the elements of the offense.

Accordingly, the Motion for Limited Disclosure of Grand Jury Transcripts (**docket entry 254**) is DENIED.

SO ORDERED.