**UNITED STATES of America,**
**Plaintiff,**

v.

**[1]  Lorenzo MUÑOZ FRANCO, [2] Francisco Sanchez Aran, [3] Ariel Gutierrez Rodriguez, [4] Wilfredo Umpierre Hernandez, [5] Enrique Gutierrez Rodriguez, [6] Rafael Dominguez Wolff, Defendants.**

**Criminal 95–0386(DRD).**

United States District Court,
D. Puerto Rico.

Aug. 25, 2000.

*Boit,* 967 F.2d at 681–83.

Maria Dominguez–Victoriano, Edna C. Rosario–Munoz, U.S. Attorney's Office District of P.R., Civil Division, Hato Rey, Desiree Laborde–Sanfiorenzo, U.S. Attorney's Office, Criminal Division, San Juan, Jorge E. Vega–Pacheco, U.S. Attorney's Office District of P.R., Criminal Division, Hato Rey, for plaintiff.

Harry Anduze–Montano, Jorge L. Arroyo–Alejandro, Francisco M. Dolz–Sanchez, San Juan, PR, Andres Guillemard–Noble, Nachman, Guillemard & Rebollo, San Juan, Michael S. Pasano, Zuckerman Spaeder Taylor & Evans, Miami, FL, David W. Roman, Edif El Caribe, San Juan, Joseph J. Rucci, Rucci, Burnham, Carta and Edelberg LLP, Darien, CT, for defendants.

Kevin Little, David Efron Law Offices, Rio Piedras.

Alberto J. Perez–Hernandez, Law Offices David Efron, Rio Piedras, for movant.

## *ORDER*

DOMINGUEZ, District Judge.

Pending before the court is co-defendants', Ariel and Enrique Gutiérrez Rodríguez ("Gutiérrez Defendants"), renewed Motion for Brady/Rule 16 Production and Alternatively Motion to Dismiss for Government Misconduct (Docket No. 624), and the United States response to said motion, (Docket No. 634).

The above captioned case charges various bank officers including its chief executive officer, Lorenzo Muñoz Franco, with misapplying bank funds, making false entries in banking records and participating in a conspiracy to perpetuate the offenses and to commit bank fraud. *See* 18 U.S.C. §§ 371, 657, 1006 & 1344 (1994). The Gutiérrez Defendants have been joined as "quondam commercial customers" of Caguas Central Federal Savings Bank. *See In re United States (Muñoz Franco)* 158 F.3d 26, 28 n. 1 (1st Cir.1998). It is alleged that an employee of the Gutiérrez, Wilfredo Umpierre Hernández ("Umpierre"), also participated in the criminal venture together with a real estate developer, Rafael Domínguez Wolff. The case

has been fully prepared for trial.[1] *See United States v. Muñoz–Franco,* 14 F.Supp.2d 167 (D.P.R.1998); *United States v. Muñoz Franco,* 986 F.Supp. 706 (D.P.R. 1997). The court has now pending a discovery, Brady/Giglio type of skirmish.

Defendants Gutierrez brothers in their motion have alleged that late production of Brady and/or Giglio [2] is a due process violation signifying that the case must be dismissed. *See United States v. Ramming,* 915 F.Supp. 854, 868 (S.D.Tex.1996). In the alternative, defendants request dismissal because of prosecutorial misconduct grounded on the allegedly reiterated Brady/Giglio violations.

The United States disagrees with defendants' description of the materials allegedly owed as constituting exculpatory material, at other times the United States alleges that certain information is not "material." Furthermore, the United States insists that all requested material have been produced. The defendants have not contested nor replied to the claim that all materials have been delivered.[3]

At the time the motions of defendants were originally filed, mid-November 1999, this case was scheduled for trial in mid-January 2000. The trial was subsequently continued until August 29, 2000 in the interest of justice and to accommodate defense counsels' prior trial commitments in other district courts in Puerto Rico and in the Southern District of Florida. (Docket No. 658—Order of January 4, 2000).

■■■ Brady establishes an obligation on the government to not only to produce requested exculpatory material applicable but also materials never requested or requested in a general fashion. *See Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 1565, 131 L.Ed.2d 490 (1995). Akin to Brady, Giglio obligates the government to produce evidence that would impeach the credibility of government witnesses. *See generally Gilday v. Callahan,* 59 F.3d 257, 266 n. 9 (1st Cir.1995), *cert. denied,* 516 U.S. 1175, 116 S.Ct. 1269, 134 L.Ed.2d 216 (1996). A Brady error occurs when the prosecution suppresses "material" evidence favorable to the accused. *See Kyles v. Whitley,* 115 S.Ct. at 1565. "Material" evidence is defined as evidence that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 685, 105 S.Ct. 3375, 3383, 3385, 87 L.Ed.2d 481 (1985). The tests for materiality suggest a "harmless error—like inquiring" leading to the threshold question of whether a constitutional error has occurred. *Gilday v. Callahan,* 59 F.3d at 267; *see also* FED. R. CRIM. P. 52(a). In the instant case the "judgment of the jury," *Kyles,* 514 U.S. at 434 n. 7, 115 S.Ct. 1555, having not yet occurred, has not been affected, and thus, the alleged late production by the prosecution in November 1999 can hardly have constituted a constitutional error. Because no constitutional error has occurred, the matter does not even reach "harmless error" level. *See Gilday v. Callahan,* 59 F.3d at 267.[4]

■■■ Nevertheless, a potential due process violation may lurk in limited cases

---

1. The case file is currently eighteen volumes consisting of over seven hundred docket entries. The undersigned Judge is handling the case after District Judge Cerezo voluntarily withdrew upon prevailing on a recusal request under 28 U.S.C. § 455(a)(1994), at the Circuit Court level, *see In re United States (Muñoz Franco )* 158 F.3d 26 (1st Cir.1998).

2. *See Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Giglio v. United States,* 405 U.S. 150, 154-5, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972).

3. Fourteen (14) specific requests were made by the defendants; all have been produced according to the United States, except those wherein a claim of attorney privilege has been asserted which is under advisement by the court pending a hearing.

4. Further, because there has been no trial held the Brady non-disclosure has certainly not "affected the outcome of the trial." *See United States v. Agurs,* 427 U.S. 97, 104, 96 S.Ct. 2392, 2398, 49 L.Ed.2d 342 (1976).

of delayed disclosure of Brady/Giglio material. "[T]he test is whether defendants' counsel was prevented by the delay from using the disclosed material effectively in preparing and presenting the defendants' case." *United States v. Ingraldi*, 793 F.2d 408, 411–412 (1st Cir.1986). "[T]he critical inquiry is not why disclosure was delayed but whether the tardiness prevented defense counsel from employing the material to good effect.... in cases of delayed disclosure, a court's principal concern must be whether learning the information altered the subsequent defense strategy, and whether, given timeous disclosure, a more effective strategy would likely have resulted." *United States v. Devin*, 918 F.2d 280, 290 (1st Cir.1990).[5] Hence, delayed disclosure per se of Brady/Giglio material does not automatically constitute a due process violation; defendants must demonstrate that the effect of the delay has negatively impacted the defense strategy or that the preparing and presenting of the defendant's case has been prejudicial.

█ Even assuming that all the Brady information produced in delayed fashion was "material" (the information could affect "the judgment of the jury"),[6] defendants have not shown how the information produced in November 1999 adversely affects defendants' trial strategy or defense

in August/September 2000.[7] Defendants have taken the posture that late production signifies a violation of due process. The jurisprudence requires proof of the adverse effect of late production in the case of the defense. *See United States v. Ingraldi*, 793 F.2d at 411–12; *United States v. Devin*, 918 F.2d at 290. Hence, the Motion to Dismiss the case based on delayed production of Brady/Giglio, FED. R. CRIM. P. 16, is **DENIED**.

Defendants in the alternative allege prosecutorial misconduct and request dismissal grounded on late production of discovery. The court remains cognizant that federal courts "may, within limits, formulate procedural rules not specifically required by the Constitution or Congress" to supervise prosecutorial misconduct. *United States v. Hasting*, 461 U.S. 499, 505, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983). The court has the "supervisory power to secure enforcement of 'better prosecutorial practice and [the power to] reprimand ... those who fail to observe it.'" *United States v. Santana*, 6 F.3d 1, 10 (1st Cir. 1993) (quoting *United States v. Osorio*, 929 F.2d 753, 763 (1st Cir.1991)). However, "such powers must be used sparingly." *Id.* (citing *United States v. Babb*, 807 F.2d 272, 279 (1st Cir.1986); *United States v. Lieberman*, 608 F.2d 889, 899 (1st Cir.

5. Late disclosure even as late as trial does not necessarily per se constitute a due process violation.

"When discovery material makes a belated appearance, a criminal defendant must ordinarily seek a continuance if he intends to claim prejudice. A continuance affords time to study the newly emergent information, consider its possible ramifications, change trial strategy (if necessary), assess any potential prejudice, and determine how best to use the information. As a general rule, a defendant who does not request a continuance will not be heard to complain on appeal that he suffered prejudice as a result of late-arriving discovery. Thus, in situations where defense counsel does not seek a continuance upon belated receipt of discovery information, a court often can assume that counsel did not need more time to incorporate the information into the defense's game plan."

*United States v. Sepulveda*, 15 F.3d 1161, 1178 (1st Cir.1993) (internal citations omitted). Therefore, even late production of Brady/Giglio materials at trial requires defendants, at a minimum, to request a continuance and to prove the effect of the late production in court strategy, preparation and presentation of defendants' case.

6. As opposed to information that is merely "favorable." *See United States v. Santana*, 166 F.3d at 38 ("reasonable probability" of determining the trial outcome is required in cases of "material" evidence).

7. The court is aware that there are some materials not yet disclosed wherein the United States is claiming attorney privilege. These materials shall be generally examined under the doctrine of *Goldberg v. United States*, 425 U.S. 94, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976).

1979), *cert. denied,* 444 U.S. 1019, 100 S.Ct. 673, 62 L.Ed.2d 649 (1980)). Further, "[p]otent elixirs should not be casually dispensed." *Id.*

As in Santana, this case does not "warrant such strong medicine." *Id.* The defense has not proven prejudice relating to the late production of Brady/Giglio/FED. R. CRIM. P. 16 material. The court will not "castigate the prosecution for misconduct that did not prejudice (as opposed to injure) the defendant." *Id.* (citing *United States v. Hasting,* 461 U.S. at 505, 103 S.Ct. at 1978). Accordingly, the request to dismiss based on prosecutorial misconduct is **DENIED**.

**IT IS SO ORDERED.**